# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KENNETH M.,**[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 20-1307-JWL |
| **KILOLO KIJAKAZI,**[2] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to sections 1602 and 1614 of the Social Security Act, 42 U.S.C. §§ 1381a, and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) evaluation of Plaintiff's use of a cane or of the other record evidence, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

**I.      Background**

Plaintiff protectively filed an application for SSI benefits on February 27, 2018. (R. 15). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in evaluating his use of a cane and relied on outdated evidence which does not reflect the entire record when assessing residual functional capacity (RFC).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

2

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II.     Plaintiff's Use of a Cane

Plaintiff notes his testimony at the hearing that he can stand only two minutes without using his cane (Pl. Br. 13) (citing R. 56)[3] and argues the ALJ failed to assess this allegation although the ALJ acknowledged Plaintiff's testimony he can stand two minutes without his cane.  Id. (quoting R. 20).  He claims this failure is contrary to Social Security Ruling (SSR) 16-3p's requirement that the "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the

---

[3] The court notes the correct citation where Plaintiff stated he can stand at one time without his cane for "[p]robably two minutes" should be (R. 55).

evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  (Pl. Br. 13) (quoting SSR 16-3p, 2017 WL 5180304, at *10 (SSA Oct. 25, 2017); and citing A.B. v. Saul, No. 20-1114-SAC, 2020 WL 7714408, at *3 (D. Kan. Dec. 29, 2020) for the proposition such an error requires remand).

Plaintiff recognizes that the ALJ cited a particular treatment note to discount Plaintiff's allegations regarding his ability to walk with a cane and argues,

> in the same note that the ALJ cited to discount allegations of the ability to walk with a cane (Tr. at 21, citing Exhibit B22F/32), the medical provider noted that "Patient currently already a malaise [sic] with a cane and is able to ambulate as normal." (Tr. at 994).  This note indicates that [Plaintiff] is fatigued with use of a cane, though it does not specifically address the ability to stand with a cane.

Id. at 14.

In response, the Commissioner notes the ALJ found Plaintiff capable of only a limited range of light work and ultimately determined he "could perform two representative sedentary occupations because of these limitations in his ability to stand and walk."  (Comm'r Br. 4).  She argues, "While the ALJ did not specify the exact total time Plaintiff required a cane during his brief periods of standing and walking throughout the workday, a commonsense reading of the ALJ's findings is that Plaintiff would require a cane for the up to two hours that he needed to stand and walk per workday."  Id. (emphasis in original).  She argues the colloquy between the ALJ and the vocational expert (VE) at the hearing supports this understanding.  Id. at 4-5.  She argues "the ALJ explicitly considered th[e] claim [that Plaintiff must use a cane to stand more than two

minutes at a time] and reasonably rejected it." Id. at 5 (citing R. 21). In his Reply Brief, Plaintiff argues the Commissioner's assertion of a "commonsense reading" of the ALJ's decision "provides, at best, no more than post hoc rationalization for the ALJ's deficiencies." (Reply 2). He argues, "the 'exact limitation' for the use of a cane while both standing and walking during the day was not presented to the vocational expert at the hearing," was not stated in the ALJ's decision, and the Commissioner's argument "has no basis in fact and should be rejected." Id. at 2-3.

### A.     The ALJ's Findings

The ALJ considered Plaintiff's use of a cane and discussed that use with reference to the record evidence. He found that Plaintiff "requires use of a cane for ambulation." (R. 20) (finding no. 4) (bold omitted). In evaluating Plaintiff's allegations of limitations resulting from his impairments, the ALJ noted Plaintiff's allegation that

> he can lift 20 pounds, stand two minutes without his cane, stand 10 minutes with his cane, walk two minutes with his cane, and sit only two minutes (though he did admit driving himself to the hearing, which took 30 minutes; he did not stop along the way; and his only problem driving is "at night").

Id. He noted physical examinations show Plaintiff has reduced strength in his left leg and "he does use a cane to walk." Id. at 21. The ALJ related:

> A treatment note in October 2019, when [Plaintiff] tripped and injured his right ankle, notes that he was already using a cane to ambulate and able to ambulate normally with it (undermining his assertion he can walk only two minutes and stand 10 minutes with a cane) (B22F/32 [(R. 994)]). Notwithstanding these conditions, the claimant can drive, perform self-care, and operate his engine repair business.

Id. When evaluating the prior administrative medical finding of the state agency physician, Dr. Sampat, the ALJ found it "generally persuasive," but found it did "not

6

fully consider all limitations, including from his asthma, use of a cane, and degenerative changes in his knees.  After reviewing the entire file, the undersigned finds the claimant more limited in standing and walking, postural activities, and environmental restrictions." Id. at 23.

**B.     Analysis**

Plaintiff has shown no error in the ALJ's evaluation of his use of a cane.  The ALJ clearly found Plaintiff both needs a cane for ambulation and can "stand and/or walk 2 hours in an 8-hour workday."  (R. 19-20) (Bold omitted).  Because the ALJ found Plaintiff's assertion he can stand only 10 minutes with a cane was undermined by the October 2019 treatment note that Plaintiff "was already using a cane to ambulate and able to ambulate normally with it" (R. 21) (citing R. 994), it is equally clear the ALJ found Plaintiff is able to stand with a cane longer than ten minutes.  Plaintiff has shown no requirement that he stand without a cane.  He has not shown any standing task required of the two representative jobs assessed by the ALJ (addressing clerk or document preparer) which require standing without a cane.  The jobs are sedentary and require "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 416.967(a).  Plaintiff does not even suggest he is unable to perform this lifting or carrying while using a cane.  Therefore, there was no reason for the ALJ to determine how long Plaintiff can stand without a cane because he can do all of the standing or walking required, while using a cane.

Moreover, Plaintiff's reliance on the medical provider's note that "Patient currently already a malaise [sic] with a cane and is able to ambulate as normal" is

misguided.  (Pl. Br. 14) (quoting R. 994).  Plaintiff argues, "This note indicates that [he] is fatigued with use of a cane, though it does not specifically address the ability to stand with a cane."  Id.  The court disagrees.  Plaintiff had earlier recognized that note indicated "<u>as the ALJ summarized</u>, that [Plaintiff] was 'already using a cane to ambulate and able to ambulate normally with it (undermining his assertion he can walk only two minutes and stand 10 minutes with a cane)'".  (Pl. Br. 13-14) (quoting R. 21) (emphasis added by the court).  Although the note literally states, "Patient currently already a malaise [sic] with a cane and is able to ambulate as normal," the ALJ's understanding, "he was already using a cane to ambulate and able to ambulate normally with it" is the more likely understanding.

First, "already a malaise with a cane" is gibberish.  "Malaise" means "an indefinite feeling of debility or lack of health often indicative of or accompanying the onset of an illness."  Available online at: [https://www.merriam-webster.com/dictionary/malaise](https://www.merriam-webster.com/dictionary/malaise).  Therefore, the picture presented by the phrase "already a malaise with a cane" is of an individual who was struck or beaten with a cane and feeling the effects thereof.  It does not indicate, as Plaintiff suggests, that Plaintiff "is fatigued with use of a cane," because fatigue is defined as "weariness or exhaustion from labor, exertion, or stress," and is distinct from malaise.  Available online at:  [Fatigue | Definition of Fatigue by Merriam-Webster](#).  This is a distinction readily apparent to a medical provider, who is unlikely to confuse the two terms.

Moreover, many medical notes are transcribed by dictation (<u>e.g.</u>, R. 985, 998), and as anyone who has dictated to his or her cell phone is aware, many laughable results arise

therefrom. Thus, as the ALJ found, likely the medical provider dictated "Patient currently already ambulates with a cane and is able to ambulate as normal," but his device interpreted the first "ambulates" as "a malaise." Whether this suggestion is correct or not, the ALJ's understanding of the treatment note is a reasonable understanding, the evidence does not compel the understanding reached by Plaintiff, and in such a case the court must credit the ALJ's interpretation. Lax, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.") (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). The point is that although neither the ALJ nor this court know precisely the circumstances or the intention of the medical provider when producing the treatment note at issue, the ALJ reached an understanding from that treatment note, the record evidence supports that understanding, and the court may not substitute a different understanding.

The court finds no error in the ALJ's evaluation of Plaintiff's use of a cane.

### III. Prior Administrative Medical Findings

Plaintiff claims the evidence relied upon by the ALJ in assessing the mental RFC "is outdated and does not reflect the entire record, and the ALJ failed to resolve th[e] conflict" between the entire record and the evidence relied upon. (Pl. Br. 16) (underline omitted). He argues, "No reasonable mind would accept the outdated, inconsistent prior

9

administrative medical findings as sufficient to support the mental RFC conclusion." Id. He argues the evidence received after the state agency psychologists' opinions[4] demonstrate a worsening condition and the ALJ failed to recognize and resolve the conflict. (Pl. Br. 17). He argues the evidence which shows a worsening condition is the medical opinions of his treatment providers and the treatment records from 2018 through 2020 showing his "medications were consistently increased and/or changed due to increased symptoms and ineffectiveness of treatment." Id. The Commissioner argues the record does not show a worsening condition. (Comm'r Br. 7). She argues the ALJ properly found the opinions of Plaintiff's medical providers were not persuasive and nevertheless assessed greater mental limitations than did the state agency psychologists whose opinions he found mostly persuasive. Id. at 8.

Beyond this acknowledgment, the court will not address Plaintiff's pejorative assertion that the ALJ (and by extension, this court) does not have a reasonable mind because he accepted the state agency psychologists' opinions as "mostly persuasive."

The ALJ addressed the medical opinions of Plaintiff's treatment providers. He found Ms. Lashley's opinion not persuasive because she is not an acceptable medical source, her opinion was largely a checkbox form with little support for the opinion, and the opinion was not consistent with Plaintiff's daily activities including performing small

---

[4] The opinions expressed by state agency psychologists during the consideration and reconsideration levels of agency review are properly called "prior administrative medical findings." 20 C.F.R. § 416.913(a)(4) (2019). But they are considered pursuant to the same standards as medical opinions, id. § 416.920c, and for simplicity the court hereinafter refers to them as medical opinions.

engine repair.  He was not persuaded by Dr. Rheums's opinions because they were inconsistent with treatment notes and daily activities and unsupported by written explanation.  He was not persuaded by Ms. Peckham-Wichman's opinion because the marked limitations she assessed are inconsistent with the evidence and lack narrative explanations in support.

Plaintiff argues that these opinions demonstrate Plaintiff's worsening condition and that his medications were increased due to increased symptoms or ineffective treatment.  But, he cites to no treatment note where a provider stated that Plaintiff's condition was worsening, or that medication was increased due to increased symptoms or ineffective treatment.  With mental impairments, symptoms increase or decrease from time to time for various reasons, and mental healthcare providers change medications and/or treatments for various reasons.  Lacking the provider's statement of the reasons for the changes, neither the court nor Plaintiff's counsel may assume a reason.  The mere fact that Plaintiff's providers stated opinions later in time than the state agency psychologists and opined greater limitations than those of the state agency psychologists does not demonstrate Plaintiff's condition was worsening.  Moreover, Plaintiff points to no evidence which compels finding Plaintiff's providers' opinions more persuasive.  Further, Plaintiff does not point to evidence which compels a finding that the state agency psychologists' opinions are not persuasive.  Plaintiff has shown no error in the ALJ's evaluation of the medical opinions or in his partial reliance on the "mostly persuasive" opinions of the state agency psychologists.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated August 20, 2021, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**